UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROMANE J. RICKELS, | ) | CASE NO. 3:06 CV 2066 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| JUDGE R. CUPP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On August 29, 2006, pro se plaintiff Romane J. Rickels filed the above-captioned action under 42 U.S.C. §§ 1983 and 1985 against Ohio Third District Court of Appeals Judges R. Cupp, S. Shaw, and T. Bryant; and Paulding County Common Pleas Court Judge J. Webb. In the complaint, plaintiff alleges that he received unfavorable rulings from the Paulding County Probate Court, the Paulding County Court of Common Pleas and the Third District Court of Appeals. He seeks reversal of these judgments, reinstatement of the probate court proceedings in this court, or in the alternative, distribution of all estate assets to him, and monetary damages.

*Background*

Although Mr. Rickels's pleading is 94 pages long, it contains very little information and is incomprehensible in many parts. Much of the background information contained herein was gleaned from the numerous exhibits attached to the complaint. It appears that this matter arises

from a probate court case in Paulding County, Ohio. A guardianship had been established for Mr. Rickel's aunt, Minnie Rickels, through the probate court. Janet Goyings, Ms. Rickels's great niece, had been designated as her guardian. Minnie Rickels died in October 2002. Thereafter, Mr. Rickels produced a document in which Minnie Rickels purported to give all of her property to him. Using this document for support, he objected to the inclusion of Minnie Rickels's property in the final account of the guardian. He was unsuccessful. He appealed that decision to the Ohio Third District Court of Appeals and was, again, unsuccessful. Mr. Rickels then attempted to have the document probated as his aunt's Last Will and Testament. Once again, the court did not rule in his favor and found that the document lacked evidence of testamentary intent. He appealed that decision to the Third District Court of Appeals, but the probate court's ruling was upheld.

Thereafter, Mr. Rickels began filing numerous documents in the guardianship proceedings, the estate proceedings, the appellate proceedings and other matters. He submitted approximately 120 documents, 10 of which were Motions filed in the guardianship proceeding seeking to have the judgment set aside, and arguing that the court relied on false statements when it appointed Ms. Goyings as the guardian. The probate court found each of the Motions to lack merit. Mr. Rickels filed 30 Motions in the estate proceeding. Nine of those Motions sought to remove Ms. Goyings as the estate administratrix, and accused her of embezzling money from the estate and destroying the decedent's home by removing items from it. Each Motion was found to be meritless. Mr. Rickels then filed 12 Motions and several counterclaims in a declaratory judgment action brought by Ms. Rickels's other heirs. Mr. Rickels claimed the heirs filed the action to discriminate against him and argued that the probate court lacked jurisdiction over the estate. The probate court denied the motions. Mr. Rickels filed at least two complaints in the Court of

Common Pleas in which he alleged that Ms. Goyings improperly deleted his name as a beneficiary on a payable on death money market account, and accused her of making false representations to gain access to his aunt's safe deposit boxes.

Prompted by the voluminous and repetitive court filings, Ms. Goyings filed a complaint against Mr. Rickels seeking to have him declared a vexatious litigator under Ohio Revised Code § 2323.52(A)(3). Mr. Rickels filed a 59 page answer denying Ms. Goyings's allegations and a counterclaim for intentional infliction of emotional distress. Paulding County Common Pleas Court Judge J. David Webb held a bench trial on the matter in October 2005 and issued a decision in February 2006. Judge Webb found that Mr. Rickels's actions served merely to harass and injure Ms. Goyings and were not warranted under existing law or supported by a good faith argument. The court then concluded that Mr. Rickels was a vexatious litigator as defined by the Ohio Revised Code and prohibited him from filing or continuing any legal proceeding without prior leave of court. His counterclaim was dismissed. Mr. Rickels appealed these rulings to the Third District Court of Appeals but the decision of the Common Pleas Court was affirmed on July 3, 2006.

Mr. Rickels now files this federal court action to essentially challenge all of those state court judgments. He lists 6 grounds upon which he believes he is entitled to relief. First, he asserts that the three Appeals Court Judges denied him equal protection under the Fourteenth Amendment because they indicated in their unpublished decision that it would not be considered controlling authority for any other case. Second, he contends he was denied his Fourteenth Amendment right of "self-representation in probate estate-distribution proceedings due to invidiously discriminatory animus of plaintiff's class of 'pro se' litigators of decedents' estates."

3

(Compl. at 9.)  He states, "the 4 defendants' intentional disregard Civ. Proc. Rule & stare-decisis-doctrine for their unjust decrees.  Disregardment was the complaint-plaintiff's 1 word reply "no" to a multi-fact Req. for Admission sufficient for complaint-dismissal."  (Compl. at 9.)  Third, he indicates that the vexatious litigant judgment deprives him of a liberty interest under Fourteenth Amendment "with stigmatation (sic) of honor character, reputation with an unjust Vex. Lit. Judgment which states; harassing the Estate-Fiduciary, intentional estate-delay, filings not warranted by law & without grounds' due to the 4 defendants' invidious discriminatory animus of plaintiff's class of 'pro-se litigators of decedents' estates' which nullifies judicial immunity." (Compl. at 10.)  His fourth ground is nearly identical to his second ground.  In his fifth ground, he asserts that the vexatious litigant judgment denied him a property right under the Fourteenth Amendment because he can no longer file Motions to contest the distribution of assets in his aunt's probate estate.  His sixth, seventh, and eighth grounds for relief mimic his fifth ground but assert denials of equal protection.  Mr. Rickels seeks "(1)  Reversal of Judgment of Vexatious Litigator; (2)  restoration of deprived rights of equal protection-of-law, self representation, liberty-interests, stigmatation, protection of property (real & personal); (3) restoration of 'legally-competent' in probate estate-distribution proceedings."  (Compl. at 15.)  He further requests that the matter be "remand[ed] for a new trial," that the estate distribution proceedings be stayed until a new trial can be conducted, or that he be awarded his aunt's payable on death accounts, and full ownership of her farm property, or that he be awarded the monetary value of those assets.  (Compl. at 15.)  In addition, Mr. Rickels seeks unspecified "joint and several liability" from the judges for issuing their respective rulings.  (Compl. at 9.)

## *Analysis*

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). Mr. Rickels's pleading is so unintelligible at times that it is difficult to determine precisely the claims he seeks to pursue. Giving this pleading a rather generous reading, it appears that Mr. Rickels believes the state court judgments were incorrect, and is asking the court to overturn those judgments, litigate these cases anew, and award him monetary damages against the judicial officers who rendered decisions against him. This federal court lacks jurisdiction to grant the requested relief and this action therefore must be dismissed.

**Rooker-Feldman Doctrine**

As an initial matter, this court cannot reverse a state court judgment. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994); Coles v. Granville, 448 F.3d 853,

5

857-59 (6th Cir. 2006).  Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action.  Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis.  First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding.  Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002).  "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment."  Catz, 142 F.3d at 293.  Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action.  Id.; Tropf, 289 F.3d at 937.

In the present action, Mr. Rickels asks this court to reverse unfavorable state court judgments and award him monetary damages against the judges who rendered those decisions.  The injuries he alleges he suffered are clearly caused by the state court decisions themselves and Mr. Rickels's claims that the law was invalidly applied in his cases.  Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him.  This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested.  Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

**Res Judicata**

In addition, this court is unable to litigate anew a matter which has already been decided by a state court. A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state. 28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). The preclusive effect of the previous state court judgments are therefore governed by Ohio law on preclusion. Id. Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. National Amusement, Inc. v. Springdale, 53 Ohio St. 3d 60, 62 (1990). The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. Id. The Ohio courts have already determined that Mr. Rickels's claims to the estate assets are without merit and have declared him to be a vexatious litigator. This court is bound to give full faith and credit to the decisions of those courts.

## Younger Doctrine

Mr. Rickels also requests that this court intervene in the pending probate court action and stay the distribution of assets to the beneficiaries. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See Younger v. Harris, 401 U.S. 37, 44-45 (1971). When a person is a party to an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. Watts v. Burkhart, 854 F.2d 839, 844-48 (6th Cir.1988). If the state litigant files such a case, Younger abstention requires the federal court to defer to the state proceeding. Id; see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state

interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the State." Younger, 401 U.S. at 44.

All three factors supporting abstention are present in this case.  The matters presented in the complaint are clearly the subject of an on-going Ohio probate matter, which implicate important state interests.  See Lepard v. NBD Bank, 384 F.3d 232, 237 (6th Cir. 2004). There is no suggestion that Mr. Rickels was not afforded the opportunity to raise his constitutional concerns in that state court proceeding.  This court must abstain from intervening in the Paulding County Probate Court proceedings.

## Judicial Immunity

Finally, Mr. Rickels is unable to obtain an award of monetary damages against the judges who rendered decisions which were unfavorable to him.  Judicial officers are generally absolutely immune from civil suits for money damages.  Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997).  This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment is not impaired by the exposure of potential damages.  Barnes, 105 F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction.  Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116.  Plaintiff alleges no facts to show that either of these criteria has been met in this case.

The determination of whether an action is performed in the defendants' judicial capacity, depends on the "nature" and "function" of the act, not on the act itself.  <u>Mireles</u>, 502 U.S. at  13; <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978).  Looking first to the "nature" of the act, the court must determine whether it is a function generally performed by a judge.  <u>Stump</u>, 435 U.S. at 362.  This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges.  <u>Mireles</u>, 502 U.S. at  13.  Second, an examination of the "function" of the act alleged requires the court to assess whether the parties dealt with the judge in his or her judicial capacity.

Upon applying these principles, it is evident on the face of the pleading that Judges Cupp, Shaw, Bryant and Webb were acting in their judicial capacity at all times that the conduct alleged in plaintiff's complaint occurred.  The issuance of judicial orders pertaining to probate or appeals matters are all actions normally performed by the judges of those respective courts.  Furthermore, Mr. Rickels dealt with the defendants only in their respective judicial capacities.  He cannot overcome the broad application of judicial immunity under this criterion.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of <u>all</u> jurisdiction.  <u>Mireles</u>, 502 U.S. at 11-12; <u>Barnes</u>, 105 F.3d at 1116 (emphasis added.)  When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed.  <u>Stump</u>, 435 U.S. at 356-57.  A judge will be not deprived of immunity because the action he or she took was performed in error, done maliciously, or was  in excess of his or her authority.  <u>Id.</u>  Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which

9

the judge presides. King v. Love, 766 F.2d 962, 965 (6th Cir. 1985); see Barnes, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. See Sevier v. Turner, 742 F.2d 262, 271 (6th Cir. 1984). There are no allegations in the present case which reasonably suggest that any of the defendants clearly acted outside of the subject matter jurisdiction of their respective courts. Judges Cupp, Shaw, Bryant and Webb are therefore entitled to absolute immunity from monetary damages in this matter.

## *Conclusion*

Accordingly, this action is dismissed. The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.


S/ JAMES G. CARR
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[1] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.